1   **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF ILLINOIS**
2                   **WESTERN DIVISION**

3   UNITED STATES OF AMERICA,        )      Docket No. 06 CR 50067
                                     )                01 CR 50004
4                                    )
                    Plaintiff,       )      Rockford, Illinois
5                                    )      Monday, October 26, 2009
            v.                       )      10:00 o'clock a.m
6                                    )
    JONATHAN GEAR,                   )
7                                    )
                    Defendant.       )
8
                    **TRANSCRIPT OF PROCEEDINGS**
9        **BEFORE THE HONORABLE PHILIP G. REINHARD**

10  APPEARANCES:

11  For the Government:              HON. PATRICK J. FITZGERALD
                                     United States Attorney
12                                   (308 West State Street,
                                      Rockford, IL 61101) by
13                                   MR. MARK T. KARNER
                                     Assistant U.S. Attorney
14
    For the Defendant:               BYRD & TAYLOR
15                                   (308 West State Street,
                                      Suite 450,
16                                    Rockford, IL 61101) by

17  Also Present:                    MS. TORI POWELL
                                     Probation Office
18
    Court Reporter:                  Mary T. Lindbloom
19                                   211 South Court Street
                                     Rockford, Illinois 61101
20                                   (815) 987-4486

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

1          THE CLERK:   01 CR 50004-2 and 06 CR 50067, U.S.A. v.

2    Jonathan Gear.

3          MR. KARNER:   Good morning, your Honor.   Mark Karner on

4    behalf of the United States.

5          THE COURT:   Good morning.

6          MR. BYRD:   Good morning, your Honor.   Mark Byrd on

7    behalf of the defendant, who's present to my right.

8          THE COURT:   All right.   Good morning.

9          Good morning, Mr. Gear.

10          DEFENDANT GEAR:   Good morning.

11          THE COURT:   This matter is before me on a remand as far

12    as the sentence that I imposed in the original case, and it's

13    been remanded for imposition of a new sentence.   I guess I

14    should ask.   It appears that both cases were appealed, both

15    cases, the revocation of supervised release, which is a separate

16    case from the underlying criminal case, which is a subsequent

17    indictment.   Do you understand that both cases are sent back to

18    me for resentencing, or is it just the imposition of the

19    sentence in the '06 case?

20          MR. KARNER:   My understanding was the '06 sentence.

21          MR. BYRD:   It's kind of unclear, your Honor.   And I did

22    not handle the appeal on the case.   I notice that the slip sheet

23    bears both docket numbers, which would suggest that they were

24    vacating the entirety; although, the Begay Woods analysis would

25    clearly only apply to the '06 case.

PDF created with pdfFactory trial version www.pdffactory.com

1    THE COURT:  Well, just to be careful, I'm going to take

2    up first the '06 case, but then I will feel that just as a

3    precautionary measure to resentence him on the '01 case, which

4    is the supervised release revocation.  So, with that, let me go

5    over -- first of all, I presume you're ready to proceed.

6    MR. KARNER:  Yes.

7    THE COURT:  You're ready to proceed?

8    MR. BYRD:  Yes, your Honor.  I would note there are

9    three items I would ask for leave to tender to the court this

10    morning.  One is a very late letter received -- it's one line --

11    from Edward Mecum, Jr., who's the proprietor of Speedway Auto

12    Mall.  I have shown counsel, as well as the probation officer.

13    It just indicates that he will have a full time position with

14    the Speedway Auto Mall upon completion of his sentence.

15    THE COURT:  Thank you.

16    MR. BYRD:  The other two items, your Honor, is relevant

17    to the government's 5K1.1 motion, and I pulled these off of the

18    Illinois Department of Corrections website yesterday regarding

19    the two individuals that the defendant cooperated against.  It

20    was still up in the air what was going to happen with them when

21    we were last before the court.

22    THE COURT:  All right.  Thank you.  I've got those as

23    Defendant's Exhibits A and B.

24    One other matter of clarification only.  At the time I

25    sentenced him on both the revocation and on the other '06 case,

PDF created with pdfFactory trial version www.pdffactory.com

1    he had pending state charges, and it was unclear whether they

2    were going to proceed in state court or not.

3        MR. BYRD:  Those were dismissed shortly after the

4    sentencing here, your Honor.

5        THE COURT:  All right.  That's all I wanted to know.

6        Now, let me go over what I have before me.  In addition

7    to what you've just submitted, Mr. Byrd, I have several letters

8    that have been written by his mother and other relatives.  I

9    have certificates of completion of some courses while in the

10   Bureau of Prisons.  I have the original presentence report.

11   There was a supplement to that.  And then I have the most recent

12   presentence supplemental report dated October 8, 2009.  I, of

13   course, have the opinion of the Court of Appeals in this case,

14   and I've got a transcript of the sentencing hearing which was

15   held before me back on December 13, 2007, which I have reread.

16       Is there anything else that you have submitted?

17       MR. KARNER:  Well, not that I've submitted this time

18   around, Judge, but we still stand on our original 5K1.1 motion.

19       THE COURT:  I understand.  The government had filed

20   that in the original case, and I told you I had rejected a

21   downward variance from the guideline range, but I had considered

22   it within the guideline range.  And I might have sentenced him

23   to the high end or even over the guideline range, higher than

24   the guideline range, if he hadn't given you that support.  So,

25   thank you for reminding me.

1          MR. BYRD:  And, your Honor, from the defendant, I'm

2     pretty certain you have this, along with the certificates,

3     because it was all submitted at the same time.  There's a male

4     custody classification form, an inmate request to staff form

5     regarding his enrollment in the 40-hour drug treatment program,

6     and then a certificate of completion of the Freedom from Drugs.

7          THE COURT:  I do have that, Mr. Byrd, and I might say

8     this, just so that the record is clear.  His post-sentencing

9     conduct, that is, the conduct between the date that I sentenced

10     him and today's date, you will note that in 5K2.19 of the

11     guidelines, it says post-sentencing rehabilitative efforts, even

12     if exceptional, undertaken by a defendant after imposition of a

13     term of imprisonment for the instant offense are not an

14     appropriate basis for a downward departure when resentencing

15     defendant for that offense.

16          And there at least is one case that I've found out of

17     the Third Circuit, which is cited at 469 F.3d 319.  The

18     guideline now is only advisory, and the court takes notice of

19     that, but it would have to be an unusual case, at least that

20     Third Circuit case said, because to apply it, it gives an unfair

21     advantage to those who come back for resentencing versus those

22     who don't.  But, in any event, I'm just pointing that out.

23          Is there anything else that I should have?

24          MR. BYRD:  No, your Honor, not on behalf of the

25     defendant.

1       THE COURT:  All right.  Then the way we'll proceed is

2   that each lawyer can make a statement, and then I'll allow the

3   defendant to make any statement, and then I'll give my sentence.

4       MR. KARNER:  Judge, I just have no further comment.

5       THE COURT:  All right.  Mr. Byrd.

6       MR. BYRD:  Your Honor, the submission of the

7   post-sentencing rehabilitation efforts is not offered in support

8   of a downward departure motion as much as it's offered both to

9   suggest that the defendant's position is that the appropriate

10  sentence in this case would be a guideline sentence under the

11  amended guideline --

12      THE COURT:  Okay.

13      MR. BYRD:  -- and also to show the court -- when we

14  were previously before your Honor, there were numerous

15  certificates that had been submitted in support of defendant's

16  position that he had a true and conscientious desire to turn his

17  life around, which is something I'm sure you hear in every

18  single sentencing hearing.

19      The point of the additional certificates that have been

20  submitted, Judge, I think goes to the idea that the defendant's

21  original submissions were sincere and that the defendant has

22  demonstrated a continuing effort to try to turn his life around

23  so that he can mainstream back into society upon completion of

24  his sentence as a good and productive member of society.

25      There's certainly no question that he could never have

1   anticipated the series of events that brings him back before the

2   court today. And when we were before your Honor previously, you

3   had recommended anger management, drug counseling, and further

4   efforts to try to acquire skills and new types of potential

5   employment, vocational skills, things like that. And the

6   certificates simply show that rather than sitting around

7   languishing in prison, the defendant has made a dedicated

8   effort. He's completed the anger management/substance abuse

9   education, in addition to the 40-hour drug treatment program and

10   the Freedom from Drugs program

11       So, it's simply going to show that regardless of what

12   happens today, the defendant has and will continue to maintain a

13   dedicated effort toward trying to posture himself so that he can

14   become a good and productive citizen and not be back before the

15   court upon his release for additional crimes.

16       In addition to the quantity of incarceration, one of

17   the benefits of having a resentencing roughly two years later is

18   that it also would allow the court to examine the quality of the

19   incarceration that the defendant has served thus far. Several

20   of the letters that you received made note about where the

21   defendant had been assigned, and even though this defendant does

22   not have a violent criminal history, violent felony history,

23   particularly in light of the Begay case and read in conjunction

24   with Woods, and even though he was recommended for Oxford, he

25   actually ended up in the United States Penitentiary at Terre

1  Haute.

2          THE COURT:   The high security.

3          MR. BYRD:   Yes, sir.   And in talking with him about

4  what he experienced there, he was there for roughly ten months.

5  During that time he was approximately 35 feet away from a man

6  who was murdered, almost had his head cut off, according to Jon.

7  Later, about four months into it, he learned that somehow people

8  had discovered that he had been a cooperator and that a contract

9  had been put out on him

10         The next six months were spent in what's called the

11 shoe, which is a protective custody there at Terre Haute, with

12 severely restricted movement.   You don't take meals in general

13 population.   You eat in your cell.   You have very restricted

14 freedom of movement, to which a lot of people might say so what.

15 Prison is supposed to be tough.   He certainly has had the

16 benefit of seeing where he's going to spend the rest of his life

17 if he doesn't turn things around, and I think that that has

18 provided a significant motivation above and beyond what he

19 already had.

20         After that, he was transferred to the penitentiary in

21 Coleman, Florida, where things are much better.   It's more of a

22 facility for people who have cooperated, it's my understanding.

23 So, everybody in there is pretty much similarly situated.

24 However --

25         THE COURT:   Still maximum?

1    DEFENDANT GEAR:   Yes.

2    THE COURT:   Okay.

3    MR. BYRD:   Approximately the time that the appeal came

4 down, it's my understanding there was a classification change,

5 and he is now eligible for a medium   I don't know to what

6 degree or under the calculus how the classification of a violent

7 prior felony fit in.   I'm assuming it had some weight, and

8 perhaps that's why he has been reclassified, but we're just

9 asking your Honor to consider that.   It has been a rough two

10 years for him   And while prison is supposed to be rough, this

11 defendant, it's my position, our position, does not have the

12 type of criminal history that would justify that type of

13 imprisonment, but he certainly has learned from it and made the

14 most of it.

15        Second, it's clear in both the appellate court opinion,

16 as well as the notation -- and I understand it's not a

17 recommendation made by the probation department, but your

18 attention was drawn to the guideline for considering an upward

19 departure, and the defendant's criminal history does not

20 adequately reflect the seriousness of his past criminal history,

21 and, of course, because the guidelines are advisory, the

22 appellate court has indicated that your Honor is free to mete

23 out the same type of sentence under an advisory calculation or

24 advisory approach to the guidelines.

25        It's our position that the circumstances of this

PDF created with pdfFactory trial version www.pdffactory.com

1   offense and the circumstances of Mr. Gear's criminal history are

2   not sufficiently heinous to take this case out of the heartland

3   of other types of 922(g) offenses that come before this court.

4   Essentially, the facts of this case were the defendant was

5   dealing marijuana and had a gun in the nightstand of his bedroom

6   for protection.  There is nothing significantly different or

7   unique about this case that would warrant an upward departure.

8           In addition, looking at the defendant's criminal

9   history in light of the Begay ruling and read in conjunction

10  with Woods, the defendant essentially does not have a serious

11  felony, violent type of criminal history that would warrant an

12  upward departure under the guideline that deals with that issue.

13  In addition, we believe that the court recognized that last time

14  when it chose to sentence the defendant to the low to medium end

15  of the guidelines and not upwardly depart because the court had,

16  in effect, denied him the benefit of his cooperation in denying

17  the 5K1.1 motion.  Your Honor chose to deal with it within the

18  guideline.

19          Finally, we believe that the defendant has demonstrated

20  with these recent submissions continuing commitment to turn his

21  life around.  Again, a lot of individuals leave with the

22  sentence they get, go to prison, cause more trouble, sit around,

23  do nothing, and just wait for their time to toll, and this

24  defendant certainly has not done that.  As soon as he got into

25  Coleman and out of protective custody, he began a very

PDF created with pdfFactory trial version www.pdffactory.com

1  aggressive campaign to complete all the requirements that the

2  court sought for him with the anger management and drug

3  counseling, as well as the vocational training that we've

4  introduced some certificates for.

5         The last time a big part of the theme was the

6  defendant's desire to get back out and set a good example for

7  his son, Ethan, who at the time was seven, now he's nine, and

8  it's our position, Judge, that a sentence within the new

9  guideline range calculated as a consequence of the Begay and

10  Woods ruling would be appropriate for this defendant for a

11  variety of reasons.  It would meet the goals of Section 3553, as

12  well as provide the defendant an opportunity to come back out

13  and put to use what he has learned since he has been in prison.

14  For these reasons, Judge, we're requesting a guideline sentence

15  under criminal history category four, guideline range 15, which

16  is a 30 to 37-month sentence.

17         Do you want me to address the other sentencing issue at

18  this time or wait?

19         THE COURT:  We'll have a separate probation revocation

20  resentencing.

21         MR. BYRD:  Okay.

22         THE COURT:  I really don't think that's necessary, but

23  out of precaution, we'll do that, and you can address it later.

24         MR. BYRD:  Then that's all I have as to the 2006 case.

25         THE COURT:  Mr. Gear.

1    DEFENDANT GEAR:   Your Honor, I just want to say, you
2    know, once again I'm sorry for taking up the court's time.   I
3    want to say sorry to my family because the last three years have
4    been real rough on us.   I've been all the way down in Florida,
5    so I haven't got to see my son in almost going on two years now,
6    because when I was in protective custody in Terre Haute, you
7    don't get visits.
8         My son, he was extremely excited when he heard that my
9    appeal got granted.   He asked his mom and his grandmother if he
10   could come pick me up.   And, you know, when I called, he's like,
11   "Dad, when can I come pick you up," and I was just like, "I
12   don't know.   I don't know what the outcome is going to be."
13        But, your Honor, I just hope that you see what I've
14   done since I've been incarcerated and take that into
15   consideration because I wasn't one of the guys that just sat
16   around and watched TV and played cards and, you know, didn't do
17   anything.   I applied myself when I got there.   I took pretty
18   much every program that they offered.   The United States
19   penitentiaries don't offer many programs.   So, you know, what
20   they did offer I took.
21        You recommended me for the 500-hour drug program last
22   time I was here.   The only reason I haven't took it is because
23   they don't offer it at that facility, but I am on the waiting
24   list.   And due to my programming and staying out of trouble,
25   right before my appeal was vacated or remanded, they were

1　putting me in to go to an FCI because I stayed out of trouble,

2　and I basically been doing what I'm supposed to have been doing,

3　and they took it out because being in transit coming back here,

4　they can't have you in for a transfer.  So, that's the only

5　reason I'm not at an FCI now.

6　　　　　But, your Honor, I just want to say sorry again, once

7　again to my family, and I hope you take into consideration what

8　I've done.  Thank you.

9　　　　　THE COURT:  All right.  Thank you.  And I appreciate

10　your comments.

11　　　　　The court is now going to proceed with the sentencing

12　in 06 CR 50067.  The guidelines range has now been changed

13　pursuant to the Court of Appeals decision, and I'm using the

14　November 2007 guideline manual, which was in existence at the

15　time of his first sentence, and the guideline range -- because

16　he has a total offense level now of 15, he has nine criminal

17　history points, for a criminal history category of four, the

18　guideline range now is 30 to 37 months.

19　　　　　The court will take notice that the government still

20　persists in its 5K1.1 motion based upon his cooperation in a

21　state court prosecution that resulted in the obvious conviction

22　of two individuals, and I will now indicate what my sentence is

23　going to be and the reasons for it.  My first obligation is to

24　recalculate the guidelines, and I've done that.

25　　　　　Secondly, the court is to look at the 3553(a) factors,

PDF created with pdfFactory trial version www.pdffactory.com

1    and I will determine whether from the arguments of the

2    prosecution and defense whether a guideline sentence should

3    apply or not because it may not apply if the case falls outside

4    the heartland of the guidelines or because the guideline

5    sentence fails to reflect the Section 3553(a) factors or because

6    there may be extraordinary circumstances that the case warrants

7    a different sentence than the guideline range.  And, finally, if

8    I grant a variance from the guideline range, I must explain it,

9    and the further the variance from the guideline range, the

10   further I must show that there is an explanation for a

11   significant variance.

12           Today I'm considering the arguments that have just been

13   presented.  I'm considering the original presentence

14   investigation report, I'm considering there was a supplement to

15   that original, and now I'm considering the supplement that was

16   filed here upon remand.  I'm also considering all the letters in

17   support of the defendant and the exhibits that have been offered

18   by the defense, and, of course, I'm applying all the 3553(a)

19   factors.

20           First I'm going to adopt all my statements that were

21   made at his original sentencing hearing on December 13, 2007,

22   which I think fully support the sentence I'm about to impose,

23   which is a variance above the present guideline range.  And this

24   is something that I have reread the transcript, and I'm going to

25   indicate that even at the time when I originally sentenced him,

1    which was within the guideline range, I stated, and I'm quoting

2    now, "If you hadn't cooperated with the government, I would

3    sentence you to the 71 months or higher," and the 71 months at

4    that time was the high end of the guideline range.  And then I

5    said, "I might depart -- I might have departed on an upward

6    basis because here's a person who is a felon in possession with

7    a gun while he's on supervised release and commits that offense

8    again.  I'm going to give you consideration, however, for your

9    cooperation, but it's not what the government is requesting."

10   And I gave you on 06-50067 63 months, which was within that

11   guideline range, but, as I indicated, it could have been higher.

12           After reviewing this again, and I spent a considerable

13   amount of time on this, I believe, first of all, that my prior

14   reasons for a long sentence were fully articulated, and even

15   based on the 3553(a) factors and all the relevant factors I

16   stated in detail, a substantial sentence was warranted, and I'm

17   adopting all of the findings and statements that I made at that

18   time.

19           While I know that the guideline range now is

20   significantly lower and I do consider that as one of the 3553(a)

21   factors -- that's 3553(a)(6) -- I'm going to add other comments

22   that I think are appropriate to justify a variance above the now

23   existing guideline range.

24           First of all, Mr. Gear, this crime that you're being

25   sentenced on is the fourth felony conviction that you've had.

1   Your third felony conviction, the one immediately prior to the

2   one I'm sentencing you now on, was the same charge as you have

3   in this case, felon in possession.  Your second felony

4   conviction in state court was for reckless discharge of a

5   firearm  That's three of the four felony convictions involving

6   a firearm and one in which you actually performed a shooting,

7   that is, the second felony.

8          Even more important than those is that while on

9   supervised release, besides the conviction for felon in

10  possession of a gun for which I am now sentencing you, during

11  the term of your supervised release, you possessed a firearm on

12  May 13, 2005.  That's relevant conduct.  That's the incident at

13  one of the local bars where you became involved and pointed a

14  firearm in the face of the bar manager.  All of that's contained

15  on lines 345 through 380 of the presentence investigation

16  report.  Another incident that you committed on supervised

17  release with a gun occurred on May 13, 2005, involving a Lindsay

18  Ashlock, and that's contained at lines 381 through 393 of the

19  PSR report.

20         And then this offense, while on supervised release,

21  that took place on October 24, 2006, and you possessed in your

22  home a weapon while you were selling drugs.  You were placed on

23  supervised release -- or you actually began your supervised

24  release on March 5th, 2004.  So, within about one year, you

25  displayed that weapon and different weapons on a number of

1  occasions.

2      I have considered your cooperation in this resentencing

3  in the state prosecutions and your efforts while in the Ogle

4  County Jail when you were awaiting your original sentence. The

5  original sentence variance above the guidelines was necessary,

6  and I believe a sentence now is justified for all of the reasons

7  that I've just stated.

8      Your conduct with a weapon and using it and threatening

9  to use it on several occasions and possessing it while on

10  supervised release, at least on three separate incidents,

11  beginning one year after your release from the halfway house,

12  all show that you are a dangerous person, and the only way to

13  deter you is to remove you from society for a lengthy term

14      You may think you don't deserve to be next to people

15  who are convicted of murder or are dangerous felons, but I'm

16  sure the person that you flashed the gun at in the bar while you

17  were on supervised release didn't think much of you and would be

18  scared and would want you away for a long period of time.

19      Therefore, the court, to protect society and deter you

20  from committing any further offenses, I'm going to reimpose the

21  same 63-month sentence of imprisonment. That shall be

22  consecutive to your supervised release revocation sentence in

23  01-50004. This is substantially above the high end of the new

24  guideline range, but is justified by all the reasons that I've

25  just stated today and at your original sentence, where I also

1  contemplated a variance upward from the guideline range existing

2  at that time.

3         Your post-sentence conduct I will recognize is

4  commendable.  All I can say is to keep it up.  But it makes no

5  difference as to my sentence.  I will consider it, but it does

6  not change what I'm going to -- what I have sentenced you to.

7         I'm going to recommend to the Bureau of Prisons that

8  you be designated to Oxford, Wisconsin, and, if that's

9  unavailable, to the next closest institution to Rockford.  I'm

10  going to recommend that you go through drug counseling and that

11  you go through the comprehensive drug program  I'm going to

12  recommend that you receive mental health evaluation and

13  counseling.

14         Following your release from imprisonment, I'm

15  reimposing the three-year supervised release term, and the

16  conditions shall be the standard written conditions.  The

17  special conditions shall be that you'll get drug and alcohol and

18  mental health aftercare under the direction of the probation

19  officer, you shall not drive without a valid license, and the

20  balance of any unpaid fine shall be paid within the first year

21  of supervised release.  I'm reimposing the same fine and the

22  $100 assessment.

23         I'm going to advise you now on this case as to your

24  appeal rights.  You have a right to appeal this sentence to

25  determine whether it was reasonable, and in order to do so, you

1    have to file a notice of appeal within ten days of this date.

2    You can file it yourself or through your lawyer or ask the Clerk

3    to file it.  If you don't file it within that time period, then

4    you lose the right to appeal.  If you're indigent, you can apply

5    to have somebody appointed to represent you.

6           That's the sentence of this court.  Is there any

7    question about the sentence in this matter?

8           MR. BYRD:  No, your Honor.

9           MR. KARNER:  No.

10          THE COURT:  All right.  We'll proceed then on to the

11   next matter, and that is his case which is 01 CR 50004.  It

12   stands before me on his admissions, and I've revoked his

13   supervised release.  Whether it's necessary to resentence him on

14   that, I'm unclear on, but I'll allow you to make any arguments

15   that you wish to.  With that, Mr. Karner.

16          MR. KARNER:  No further comment, Judge.

17          THE COURT:  Mr. Byrd.

18          MR. BYRD:  Judge, just for the record, we would ask

19   that whatever sentence the court impose be run concurrent to the

20   63-month sentence.  If I understand the court correctly, this is

21   a sentence under 3553 rather than a four-level upward departure,

22   or perhaps it doesn't really matter.  But the court's primary

23   motivation for doing it, one of the primary motivations, I

24   should say, is the fact that he committed the offense while on

25   mandatory supervised release, and to the extent that that serves

PDF created with pdfFactory trial version www.pdffactory.com

1    as a basis for the upward departure or the nonguideline sentence

2    under 3553, we would respectfully suggest that a concurrent term

3    of imprisonment on the underlying supervised release violation

4    would be appropriate.

5         THE COURT:  Do you wish to say anything further?

6         DEFENDANT GEAR:  No, your Honor.

7         THE COURT:  All right.  The court in resentencing

8    Mr. Gear will examine and has examined my transcript of the

9    sentencing hearing, which is a part -- also was heard on

10   December 13, 2007, Pages 31 through 38 of that transcript.  I'm

11   adopting all those comments, findings, and conclusions, and I'm

12   also going to consider the 3553(a) factors which I had

13   considered before and explained before.  And the court for the

14   same reasons that I found in his original hearing, I am

15   reimposing the 21-month imprisonment to the Bureau of Prisons to

16   be run consecutive to the sentence in 06-50067.

17        This is a substantial sentence, but it is conduct on

18   supervised release.  Not just the conviction in the '06 case,

19   but all the other times that he possessed a firearm while on

20   supervised release certainly are very aggravated and support a

21   sentence that I'm imposing.

22        And I'm reimposing the one-year supervised release

23   concurrent with the supervised release in 06-50067 with the

24   standard written conditions and the same special conditions that

25   I had recited as to his sentence in 06-50067, except there's no

PDF created with pdfFactory trial version www.pdffactory.com

1    condition as it relates to a fine because there is no fine in

2    the supervised release conditions when a person has been

3    revoked.

4              Therefore, I'm going to also advise you of your appeal

5    rights the same as I did before.  You can file a notice of

6    appeal, and it must be filed within ten days.  You can file it,

7    your lawyer can file it, or you can ask the Clerk to file it.

8    If you don't file it in ten days, there is no appeal from it,

9    and if you can't afford counsel on appeal, the court will

10   appoint counsel for you.

11             All that being said, Mr. Gear, I do appreciate the fact

12   that you have taken courses and tried to conduct yourself

13   appropriately while in prison.  You should.  It's for your

14   benefit, not for me.  Do it for yourself.

15             And I know his mother is here and other relatives, and

16   they're disappointed, and they don't think he should be housed

17   with all other sorts of individuals who have equal records in my

18   opinion.  All I can say is you've seen this young man go through

19   his life.  He's committed offenses with a gun, and society won't

20   tolerate that.  He may have some good qualities, and I don't

21   dispute that, but the bad qualities are what lands you in the

22   term of imprisonment which I have imposed.  Good luck to you.

23             MR. BYRD:   Thank you.

24             MR. KARNER:   Thank you.

25

1     (Which were all the proceedings had in the above-entitled

2     cause on the day and date aforesaid.)

3     I certify that the foregoing is a correct transcript from

4     the record of proceedings in the above-entitled matter.

5

6

7     _____
      Mary T. Lindbloom
8     Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com